**FILED & ENTERED**

**NOV 02 2018**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY tatum      DEPUTY CLERK**

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>CRYSTAL CATHEDRAL MINISTRIES,<br><br>    Debtor. | Case No. 2:12-bk-15665-RK<br><br>Chapter 11<br><br>**MEMORANDUM DECISION ON DEBTOR'S MOTION FOR ISSUANCE OF ORDER DIRECTING CAROL MILNER AND HAROLD J. LIGHT, ESQ. TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT (FRBP 9020); AND FOR DAMAGES AND ATTORNEYS' FEES FOR INTENTIONALLY VIOLATING THE PERMANENT DISCHARGE INJUNCTION**<br><br>Trial Date: September 20, 2018<br>Time:   9:00 a.m.<br>Place:   Courtroom 1675<br>      Roybal Federal Building<br>      255 East Temple Street<br>      Los Angeles, CA 90012 |

This contested matter of the Motion of Debtor Crystal Cathedral Ministries ("Debtor") for Issuance of Order Directing Carol Milner ("Milner") and Harold J. Light, Esq. ("Light" and, collectively with Milner, "Respondents") to Show Cause Why They Should Not Be Held in Contempt (FRBP 9020); and for Damages and Attorneys' Fees for Intentionally Violating the Permanent Discharge Injunction (the "Motion"), Electronic Case Filing Number ("ECF") 2043, filed on June 8, 2018, came on for trial before the

1   undersigned United States Bankruptcy Judge on September 20, 2018.  Douglas L.

2   Mahaffey, of Mahaffey Law Group, P.C., appeared for Debtor.  Susan I. Montgomery, of

3   the Law Office of Susan I. Montgomery, appeared for Respondents.

4        At the prior hearing on the Motion on July 31, 2018 in consultation with counsel for

5   the parties, the court set the matter for trial on September 20, 2018 to litigate the issue of

6   whether the Settlement Agreement, the contract between the parties, was executory,

7   capable of being rejected through the bankruptcy case, which issue might be dispositive

8   of the Motion.

9        Although the Motion technically sought an order to show cause why Respondents

10  should not be held in contempt, the Motion also sought relief that the court award

11  damages and attorneys' fees in Debtor's favor against Respondents.  The purpose of an

12  order to show cause was to set the matter for hearing, which the court effectively did in

13  setting the matter for hearing at its prior hearing on the Motion on July 31, 2018.

14       In support of the Motion, Debtor filed the declarations of Russell Jacobson, ECF

15  2043, filed on June 8, 2018, at 23, Douglas L. Mahaffey, ECF 2043, filed on June 8, 2018,

16  at 34, Dennis W. Ghan, ECF 2053, filed on June 14, 2018, at 12, and Gwyn Myers, ECF

17  2075, filed on September 19, 2018 (correcting ECF 2068, filed on September 7, 2018).  In

18  opposition to the Motion, Respondents filed the declarations of Carol Schuller Milner, ECF

19  2051 at 2-6 and ECF 2066 at 2-24, Harold J. Light, ECF 2051 at 7-14 and ECF 2066 at

20  34-36, and Carl Grumer, ECF 2066 at 25-33.  The court made its evidentiary rulings on

21  the record.  The court received into evidence Debtor's exhibits attached to the Motion,

22  ECF 2043, and its Request for Judicial Notice, ECF 2044, filed on June 8, 2018, the

23  exhibits attached to the Joint Status Report, ECF 2059, filed on July 20, 2018, and

24  Respondents' exhibits attached to their Objection to the Motion, ECF 2050, filed on June

25  12, 2018, and Declarations of Milner and Light in Support of the Objection, ECF 2051,

26  filed on June 12, 2018.  The court also received into evidence some of Respondents'

27  exhibits attached to the trial declarations of Milner, Light and Grumer, ECF 2066, filed on

28  September 7, 2018, specifically, Respondents' Trial Exhibits 5, 7, 8, 9, 10, 12, 13, 14, 28,

**MEMORANDUM DECISION**

1  29 and 39.  The court received into evidence the declarations of Milner as her direct

2  testimony, and Debtor cross-examined Milner.  The court also received into evidence the

3  trial declaration of Gynn Myers as her direct testimony.  The court did not receive into

4  evidence the trial declaration of Carl Grumer as his direct testimony because he did not

5  appear for cross-examination as required by the court's trial procedures, and Debtor did

6  not waive cross-examination.  Although the court did not discuss its trial procedures at the

7  trial setting hearing on July 31, 2018, the court has publicly posted its trial procedures on

8  the court's website which specifically provide that witnesses must be present for cross-

9  examination, or otherwise their testimony in their declarations may be excluded, and the

10  parties are expected to be familiar with the court's trial procedures.  With leave of court,

11  the parties made their closing arguments in the form of post-trial briefing.  *See* ECF 2077,

12  filed on October 1, 2018, and ECF 2078, filed on October 10, 2018.  The court has

13  considered the testimony and the documentary evidence received at trial, the oral and

14  written arguments of the parties, and the other matters of record before the court.

15  Debtor alleges in the Motion that Respondents violated the discharge injunction by

16  filing an answer in a state court lawsuit initiated by Debtor because the contract on which

17  that lawsuit is based was allegedly rejected or the obligations otherwise discharged in this

18  bankruptcy case.  For the reasons set forth below, the court denies the Motion.

19  This memorandum decision constitutes the court's findings of fact and conclusions

20  of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable here

21  by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

22  **I.    JURISDICTION**

23  This court has jurisdiction over this contested matter pursuant to 28 U.S.C.

24  § 1334(b).  Venue is proper pursuant to 28 U.S.C. § 1409(a).  A proceeding for civil

25  contempt in a bankruptcy case under Federal Rule of Bankruptcy Procedure 9020 is a

26  contested matter within the meaning of Federal Rule of Bankruptcy Procedure 9014.  This

27  contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).

28

**MEMORANDUM DECISION**

## II.    FACTS

**A.    Prepetition Relationship between Debtor and Milner and Their Settlement Agreement**

Debtor operated a church on real property it used to own.  *Declaration of Russell Jacobson in Support of Motion ("Jacobson Declaration")*, ECF 2043 at 23, ¶ 7 (the declaration of Russell Jacobson, Debtor's chief operating officer, attached to the Motion was not expressly received into evidence at trial, but the court receives it because there was no objection to it, the facts recited therein are mostly undisputed background facts, except as to Jacobsen's legal opinion that the final decree in this case "rejected and voided the 2006 contract between [Debtor] and Milner," which statement is improper legal opinion.)  The background of the Motion dates to the 1990s when Milner wrote a play entitled "Glory of Creation" (the "Play").  *Id.*; *see also Declaration of Carol Schuller Milner in Connection with Hearing on Motion for OSC re Contempt ("Milner Trial Declaration")*, ECF 2066 at 2, ¶ 3.  In 2003, Debtor and Milner began negotiations regarding staging the Play on Debtor's campus beginning in the summer of 2005.  *Jacobson Declaration*, ECF 2043 at 24, ¶ 8; *Milner Declaration*, ECF 2066 at 3, ¶ 6 through 5, ¶ 11.  Thereafter, a dispute arose between the parties after Debtor notified Milner that it would not be mounting the Play in 2006.  *Jacobson Declaration*, ECF 2043 at 24, ¶ 9; *Milner Declaration*, ECF 2066 at 9, ¶ 22.  The parties began to negotiate an agreement to resolve their disputes, and on or about July 8, 2006, Debtor (and its affiliates) and Milner entered into a settlement agreement resolving their disputes (the "Settlement Agreement"), *Jacobson Declaration*, ECF 2043 at 24, ¶ 10; *Milner Declaration*, ECF 2066 at 10, ¶ 24; *Settlement Agreement, Respondents' Trial Exhibits 5 and 7* and *Exhibit 1 to Jacobson Declaration*, ECF 2043 at 27-33 (these three exhibits contain three versions of the Settlement Agreement, which are essentially the same, except for variations in the language in Schedule 1 to the document).  The Settlement Agreement recited that "various disputes and controversies have broken out between [Debtor] and [Milner], all of which disputes and controversies the parties intend to and do hereby agree to fully and

**MEMORANDUM DECISION**

finally settle and resolve the same in accordance with the terms and conditions set out" in the Settlement Agreement.  *Settlement Agreement*, *Respondents' Trial Exhibits 5 and 7,* and *Exhibit 1 to Jacobson Declaration*, ECF 2043 at 27, ¶ D.  The Settlement Agreement provided for settlement payments from Debtor to Milner, *see Settlement Agreement*, *Respondents' Trial Exhibits 5 and 7,* and *Exhibit 1 to Jacobson Declaration*, ECF 2043 at 31, § 6.3 and *Exhibit A*; general releases between the parties, *see, Respondents' Trial Exhibits 5 and 7, Exhibit 1 to Jacobson Declaration*,   ECF 2043 at 30, § 4; and, according to Russell Jacobson, Debtor's Chief Operating Officer, "Pursuant to [the Settlement] Agreement, [Debtor] stored various physical properties belonging to Milner.  Much of that property remains in storage at [Debtor]'s expense including screens, screen frames and truss props, puppets, scenic elements and road cases" (the "Play Property"), *Jacobson Declaration*, ECF 2043 at 24, ¶ 11; *see Schedule 1 to Settlement Agreement*, *Respondents' Trial Exhibits 5 and 7,* and *Exhibit 1 to Jacobson Declaration*, ECF 2043 at 33.

**B.    Debtor's Bankruptcy Case**

On October 18, 2010, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C., initiating this bankruptcy case, and the date of October 18, 2010 is referred to herein as the "Petition Date".[1]  ECF 1.  On December 1, 2010, Debtor filed its Schedule G to its bankruptcy petition, Executory Contracts and Unexpired Leases, which did not list or mention the Settlement Agreement among the thousands of listed executory contracts.  *See* ECF 66-3, 66-4.  On February 16, 2011, Debtor amended its Schedule G, and again did not list or mention the Settlement Agreement.  *See* ECF 182 at 3.  On March 22, 2011, Debtor filed a Motion for Order Authorizing (1) Rejection of Certain Executory Contracts; and (2) Contract Rejection Procedures (the "Rejection

---

[1] The court takes judicial notice of its files and records under Federal Rule of Evidence 201.  *See In re Clark*, 525 B.R. 442, 449 (Bankr. D. Idaho 2015), *aff'd*, 2016 WL 1377807 (9th Cir. BAP 2016) (taking judicial notice of papers filed on its docket and noting, "papers filed in a bankruptcy case by a debtor under penalty of perjury also have evidentiary significance under Fed. R. Evid. 801(d)").

**MEMORANDUM DECISION**

1  Motion).  ECF 238.  The Rejection Motion did not list or mention the Settlement

2  Agreement as a contract to be rejected.  *See id.*

3       Milner filed four proofs of claim in the bankruptcy case: (1) Claim No. 243-1,

4  amended by Claim No. 243-2, asserting a claim of $10,615 for "housing allowance and

5  copyright infringement"; (2) Claim No. 336-1 asserting an administrative claim for an

6  unknown amount based on alleged copyright infringement relating to the Play; (3) Claim

7  No. 337-1 asserting an administrative claim of $83,608.92 for breach of an oral

8  employment contract for services as Debtor's Director of Brand Development and

9  Intellectual Property; and (4) Claim No. 342-1 asserting an administrative claim for an

10  unknown amount based on alleged copyright infringement relating to the Play.  Milner's

11  proofs of claim relate only to an alleged housing allowance, copyright infringements, and

12  an employment contract.  None of her proofs of claim alleges a breach of the Settlement

13  Agreement with regard to the Play Property.  Milner withdrew Claim Number 243-2 as it

14  relates to the copyright claim and Claim Numbers 336-1 and 342-1 in their entirety.  *See*

15  ECF 1262.  The court disallowed the remainder of Claim Number 243-2 and the entirety of

16  Claim Number 337-1.  *See Memorandum Decision on Motion of Plan Agent and*

17  *Reorganized Debtor for Judgment on Partial Findings re: Objections to Claims*, ECF 1386

18  at 47-53.

19       On December 12, 2011, the court entered its order ("Plan Confirmation Order")

20  confirming the Second Amended Chapter 11 Plan Filed by the Official Committee of

21  Creditors Holding Unsecured Claims as Modified at Confirmation Hearing (the "Plan").

22  *See Confirmation Order*, ECF 841; *Plan*, ECF 812.  The confirmed Plan stated that any

23  executory contracts "not designated for assumption or rejection at or before the

24  Confirmation Hearing, shall be deemed rejected as of the Effective Date."  *Plan* at 52,

25  ECF 812, § VIII.A.  The Plan also provided for a bar date, which has long passed, after

26  which any counterparty to a rejected contract would be precluded from seeking rejection

27  damages.  *Plan* at 53, ECF 812, § VIII.D.  According to the Plan, upon the Effective Date

28  of the Plan, Debtor was "discharged of liability for payment of debts incurred before

**MEMORANDUM DECISION**

confirmation of the Plan," and all claimants were permanently enjoined from commencing

or continuing any action to enforce any discharged Claim or Interest.  *Plan* at 54-55, ECF

812, § IX.A-B.  On April 27, 2012, the court entered an order establishing an Effective

Date of the Plan of May 1, 2012 ("Effective Date").  ECF 1105; *see Notice*, ECF 1108.  On

May 20, 2016, upon Debtor's motion, and having determined that the Plan was fully

implemented, the court entered a Final Decree Closing Case.  ECF 2028.

**C.      Debtor's State Court Action and this Motion for Contempt**

On November 7, 2017, Debtor and its affiliate, The Crystal Cathedral, filed a

*Complaint for: (1) Declaratory Relief; and (2) Injunctive Relief* (the "State Court

Complaint") against Milner in the Superior Court of California for the County of Orange,

Case Number 30-2017-00954144-CU-MC-CJC (the "State Court Action").  *See State*

*Court Complaint, Exhibit A to Debtor's Request for Judicial Notice*, ECF 2044 at 4-115;

*Declaration of Douglas L. Mahaffey in Support of Motion ("Mahaffey Declaration")*, ECF

2043 at 34, ¶¶ 2, 7.

The State Court Complaint alleged as follows:

(a)      On or about July 8, 2006, Debtor and Milner entered into the

Settlement Agreement to resolve their differences concerning the Play.  *State Court*

*Complaint, Exhibit A to Debtor's Request for Judicial Notice*, ECF 2044 at 5-6, ¶ 12.

A copy of the Settlement Agreement was attached as Exhibit 1 to the State Court

Complaint.  *See id.* at 12-18.

(b)      "[Debtor] stored various physical properties belonging to [Milner]

which included, but is not limited to, video delivery system; show control systems;

screens, screen frames and truss; costumes in gondolas; props, puppets, scenic

elements, road cases; and, show specific lighting apparatuses.  The remaining

stored equipment occupies several large (45' & 48') box trailers owned by [Debtor]."

*Id*. at 5-6, ¶ 12.

(c)      Pursuant to the Plan in the bankruptcy case, the Settlement

Agreement was deemed rejected upon Plan confirmation, and "terminated

-7-

1    [Debtor]'s duty to comply with the [Settlement Agreement] and relieved it of any and

2    all obligations to any future performance on the [Settlement Agreement] to store

3    any of the equipment of [Milner] from the [Play's] set, if such an obligation ever

4    existed." *Id.* at 6-7, ¶¶ 14-17.

5    (d)    In 2012, Debtor "caused a portion, but not all, of [Milner]'s items to be

6    transferred" from Debtor to Milner.  "However, [Milner] left the rest of the property in

7    [Debtor]'s possession." *Id.* at 7, ¶ 20.  The relationship between Debtor and Milner

8    became one of gratuitous bailment. *Id.* at 7, ¶ 18.

9    (e)    Even though Milner had taken some of her property from the

10    premises, Debtor "presently stores and maintains the remainder of [Milner]'s items

11    on its leased offsite storage facility in seven trailers owned by [Debtor]." *Id.* at 7,

12    ¶ 21.  Debtor sought to avoid additional costs incurred by storing the property. *Id.*

13    (f)    Debtor sought a declaration that the Settlement Agreement was

14    rejected in the bankruptcy case, that the relationship of gratuitous bailment was

15    created between Debtor and Milner, and that such relationship has been

16    terminated. *Id.* at 8-9, ¶¶ 24-29.  Alternatively, Debtor sought a declaration that the

17    language in Schedule 1 of the Settlement Agreement did not create an obligation

18    for Debtor to store Milner's goods indefinitely. *Id.* at 9, ¶ 30.

19    (g)    Debtor also sought an injunction compelling Milner to take possession

20    of her property or, in the alternative, allow Debtor to dispose of Milner's property.

21    *Id.* at 9, ¶¶ 31-34; *see id.* at 10.

22    On February 28, 2018, Milner filed an answer to the State Court Complaint (the

23    "Answer").  *See Answer, Exhibit B to Debtor's Request for Judicial Notice*, ECF 2044 at

24    117-125; *Declaration of Harold J. Light in Opposition to Motion ("Light Declaration")*, ECF

25    2015, at 9, ¶ 9.  Light is Milner's counsel of record in the State Court Action.  *Light*

26    *Declaration*, ECF 2051 at 7, ¶ 1.  In the Answer, Milner denied the allegations of the State

27    Court Complaint and asserted twenty-one affirmative defenses.  *See Answer, Exhibit B to*

28    *Debtor's Request for Judicial Notice*, ECF 2044 at 117-125.

-8-

1    On June 8, 2018, Debtor filed this Motion, ECF 2043, requesting that the court

2 issue an order to show cause why it should not hold Milner and Light in civil contempt and

3 issue sanctions for violating the discharge injunction based on their filing of the Answer

4 and asserting affirmative defenses in the State Court Action on grounds that the

5 Settlement Agreement was allegedly rejected in this bankruptcy case.[2]  The Motion

6 reiterated the allegations in the State Court Complaint, i.e., that the parties entered into

7 the Settlement Agreement, that the Settlement Agreement was deemed rejected in this

8 bankruptcy case, and that Debtor had no obligation to store and maintain Milner's

9 property.  *See generally Motion*, ECF 2043.  According to Russell Jacobson, Debtor's

10 Chief Operating Officer, "Pursuant to [the Settlement] Agreement, [Debtor] stored various

11 physical properties belonging to Milner.  Much of that property remains in storage at

12 [Debtor]'s expense including screens, screen frames and truss props, puppets, scenic

13 elements and road cases," the stored equipment occupies seven 45-foot and 48-foot box

14 trailers owned by Debtor, and it is costing Debtor thousands of dollars per year to store

15 the equipment.  *Jacobson Declaration*, ECF 2043 at 24, ¶¶ 11-14; *see Schedule 1 to*

16 *Settlement Agreement*, ECF 2043 at 33.  Copies of the State Court Complaint and the

17 Answer were attached to the Request for Judicial Notice in support of the Motion.  ECF

18 2044.

19                            **III.    ANALYSIS**

20 **A.    Standard for Contempt for Violation of the Discharge Injunction.**

21    A discharge in a bankruptcy case "operates as an injunction against the

22 commencement or continuation of an action, the employment of process, or an act, to

23 collect, recover or offset any [prepetition] debt as a personal liability of the debtor."  11

24 U.S.C. § 524(a)(2).  Civil contempt is the appropriate remedy for the violation of this

25 discharge injunction.  *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002).

26 Under Section 105(a) of the Bankruptcy Code, 11 U.S.C., and Rule 9020 of the Federal

27 _____

28 [2] Debtor brought earlier iterations of this motion that were denied without prejudice for failure to properly serve
Respondents.  *See* ECF 2031, 2032, 2034, 2035, 2036, 2037, 2038, 2039, 2042.

**MEMORANDUM DECISION**

1   Rules of Bankruptcy Procedure, bankruptcy courts have authority over civil contempt

2   proceedings and to impose sanctions for civil contempt.  *In re Rainbow Magazine, Inc.*, 77

3   F.3d 278, 284-285 (9th Cir. 1996).  In a civil contempt proceeding for alleged violations of

4   the discharge injunction, a debtor has the burden of proving by clear and convincing

5   evidence that a creditor knowingly and willfully violated the discharge injunction.  *In re*

6   *Kabiling*, 551 B.R. 440, 444 (9th Cir. BAP 2016) (citing *ZiLOG, Inc. v. Corning (In re*

7   *ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006)).  "The offending creditor acts knowingly

8   and willfully if (1) it knew the discharge injunction was applicable and (2) it intended the

9   actions which violated the injunction."  *Id.*

10      With respect to the first element, a creditor cannot be held in contempt for violating

11   the discharge injunction unless the creditor had actual knowledge of the injunction.  *In re*

12   *Kabiling*, 551 B.R. at 445 (citing *In re ZiLOG, Inc.*, 450 F.3d at 1008).  With respect to the

13   second element, courts apply the same analysis regarding violations of the discharge

14   injunction as they do with violations of the automatic stay.  *Id.*  "The focus is on whether

15   the creditor's conduct violated the injunction and whether that conduct was intentional; it

16   does not require a specific intent to violate the injunction."  *Id.* (citing *In re Dyer*, 322 F.3d

17   1178, 1191 (9th Cir. 2006)).

18      Debtor has not cited any legal authority in support of its proposition that the court

19   has the authority to find a party in civil contempt for filing an answer to a complaint *in a*

20   *lawsuit initiated by the debtor.*  However, even if a defensive maneuver of answering a

21   complaint could subject a party to contempt sanctions, Debtor has not proven by clear and

22   convincing evidence that Respondents knowingly and willfully violated the discharge

23   injunction.  Debtor argues that the Settlement Agreement was an executory contract that

24   was deemed rejected either upon Plan Confirmation or on the Effective Date of the Plan,

25   and that any action by Milner to enforce the Settlement Agreement would violate the

26   discharge injunction.  *See Motion*, ECF 2043 at 6-7.  If the Settlement Agreement was not

27   an executory contract, it would not have been deemed rejected, and Milner's attempts to

28   enforce it post-confirmation would not violate the discharge injunction.  Alternatively,

-10-

**MEMORANDUM DECISION**

1   Debtor argues that the court's Plan Confirmation Order has res judicata effect on Milner's

2   claims, and thus restricting her ability to assert affirmative defenses in her Answer in the

3   State Court Action, because the claims she makes in the Answer could have been

4   asserted in this bankruptcy case preconfirmation.  For the reasons discussed below,

5   neither of Debtor's arguments has merit.

6   **B.      The Settlement Agreement Is Not an Executory Contract.**

7           Whether a contract is "executory" under the Bankruptcy Code is a question of

8   federal law.  *In re Qintex Entertainment, Inc.*, 950 F.2d 1492, 1495 (9th Cir. 1991) (citation

9   omitted).  While the Bankruptcy Code does not define "executory contract," the Ninth

10  Circuit has adopted the following definition:

11              An executory contract is one on which performance remains due to
                some extent on both sides. More precisely, a contract is executory
12              if the obligations of both parties are so unperformed that the failure
                of either party to complete performance would constitute a material
13              breach and thus excuse the performance of the other.

14  *In re Robert L. Helms Construction & Development Co.*, 139 F.3d 702, 705 and n. 7 (9th

15  Cir. 1998) (en banc) (internal quotation marks omitted and citing inter alia, *NLRB v.*

16  *Bildisco & Bildisco*, 465 U.S. 513, 521–522 and n. 6 (1984), *Griffel v. Murphy (In re*

17  *Wegner)*, 839 F.2d 533, 536 (9th Cir. 1988) and  Vern Countryman, Executory Contracts

18  in Bankruptcy, Part I, 57 Minn. L. Rev. 439, 460 (1973)).  In determining whether a

19  contract is executory for purposes of federal law, a court must apply state contract law to

20  determine the legal consequence of one party's failure to perform its remaining obligations

21  under a contract and whether one of the parties' failure to perform its remaining

22  obligations would give rise to a material breach.  *In re Wegner*, 839 F.2d at 536 (citing *Hall*

23  *v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1348 n. 4 (9th Cir. 1983)).

24          The parties do not dispute that California law governs the Settlement Agreement.

25  "California courts allow termination [of a contract] only if the breach can be classified as

26  'material,' 'substantial,' or 'total.'"  *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195

27  Cal.App.3d 1032, 1051 (1987) (collecting cases).  "The law sensibly recognizes that

28  although every instance of noncompliance with a contract's terms constitutes breach, not

-11-

1   every breach justifies treating the contract as terminated.  *Id., citing inter alia,* 4 *Corbin on*

2   *Contracts* §943 at 806-807 (1951) and 11 *Williston on Contracts,* §1292 at 8-9 (3rd ed.

3   1968).  "Normally, the question of whether a breach of an obligation is a material breach,

4   so as to excuse performance by the other party, is a question of fact."  *Brown v. Grimes*,

5   192 Cal.App.4th 265, 277 (2011) (citations and internal quotation marks omitted).

6   "However, if reasonable minds cannot differ on the issue of materiality, the issue may be

7   resolved as a matter of law."  *Id.* at 277-278 (citation and internal quotation marks

8   omitted).  "Whether a partial breach of a contract is material depends on the importance or

9   seriousness thereof and the probability of the injured party getting substantial

10   performance."  *Id.* at 278 (citations and internal quotation marks omitted).

11        Here, the Settlement Agreement settled disputes between Debtor and Milner that

12   arose in 2006 after Debtor (and its affiliates) allegedly breached a prior agreement to

13   produce the Play on Debtor's campus.  The Settlement Agreement provides that "various

14   disputes and controversies have broken out between the [Debtor] and [Milner], all of which

15   disputes and controversies the parties intend to and do hereby agree to fully and finally

16   settle and resolve the same in accordance with the terms and conditions set out" in the

17   Settlement Agreement.  *Settlement Agreement*, *Respondents' Trial Exhibits 5 and 7,* and

18   *Exhibit 1 to Jacobson Declaration*, ECF 2043 at 27, ¶ D.  The Settlement Agreement

19   effectuated a reversion of all Debtor's rights in the Play to Milner, *Respondents' Trial*

20   *Exhibits 5 and 7,* and *Exhibit 1 to Jacobson Declaration*, ECF 2043 at 28, § 1.1, Milner

21   agreed to release any claims she might have against Debtor resulting from the parties'

22   then-existing disputes, *Respondents' Trial Exhibits 5 and 7,* and *Exhibit 1 to Jacobson*

23   *Declaration*, ECF 2043 at 28, § 4.3, and Debtor agreed to make certain royalty payments

24   to Milner for the past productions of the Play, *Respondents' Trial Exhibits 5 and 7* and

25   *Exhibit 1 to Jacobson Declaration*, ECF 2043 at 31, § 6.3 and at 32, Exhibit A.

26        Milner had no unperformed obligations under the Settlement Agreement (other than

27   the duty not to disparage Debtor and its affiliates) because by signing to the Settlement

28   Agreement, she released her breach of contract claims with respect to the Play against

-12-

**MEMORANDUM DECISION**

1  Debtor and its affiliates.  *Respondents' Trial Exhibits 5 and 7,* and *Exhibit 1 to Jacobson*

2  *Declaration*, ECF 2043 at 28, § 4.3.

3       Debtor has failed to demonstrate that, as of the Petition Date on October 18, 2010,

4  there were outstanding obligations under the Settlement Agreement *for both Debtor and*

5  *Milner* that were so unperformed that the failure of either party to complete performance

6  would constitute a material breach and thus excuse the performance of the other.  Debtor

7  argues that Milner had an ongoing obligation to act in good faith in either granting or

8  denying permission for Debtor to perform certain events after the execution of the

9  Settlement Agreement.  *Reply*, ECF 2053, filed on June 14, 2018, at 8-10.  In Debtor's

10  reply to Respondent's objection to the Motion, Debtor specifically identified three distinct

11  provisions in the Settlement Agreement that allegedly imposed such a duty: (1) Section

12  1.2, requiring Debtor to obtain Milner's consent before using any creative element of the

13  play; (2) Section 1.3, providing for the disposition of certain assets used in producing the

14  play and requiring Debtor to obtain Milner's consent before using such assets; and

15  (3) Section 1.4, requiring Debtor to obtain Milner's consent before creating any further

16  CDs, DVDs, or literary works based upon the Play.  *Reply*, ECF 2053, filed on June 14,

17  2018, at 8-10.

18       As a threshold matter, the court rejects the notion advanced by Debtor that *any*

19  violation of the implied covenant of good faith and fair dealing necessarily constitutes a

20  material breach.  *Reply*, ECF 2053 at 9.  Debtor argued: "As stated in *Carma Developers*

21  *(Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 372, '[T]he

22  covenant of good faith finds particular application in situations where one party is invested

23  with a discretionary power affecting the rights of another.  Such power must be exercised

24  in good faith.'  As affirmed in the *Marathon* case, a breach of this good faith covenant

25  'would constitute a material breach and thus excuse the performance of the other.'"  While

26  the court was able to find the first part of the quoted language from *Carma Developers,* it

27  was unable to locate the second part of the quoted language attributed to *Carma*

28  *Developers, i.e.,* a breach of the good faith covenant "would constitute a material breach

-13-

**MEMORANDUM DECISION**

1  and thus excuse the performance of the other."  The court could not find the quoted

2  language on page 372 of the *Carma Developers* opinion or any other page of the opinion.

3  Not only is this legal principle not found in the *Carma Developers* case, but it is

4  inconsistent with the language following the first part of the quoted language on page 372

5  that states: "However, defining what is required by this covenant has not already proven

6  an easy task. . . It has also been suggested the covenant is not susceptible to firm

7  definition but must be examined on a case-by-case basis.  Instead of defining what is

8  consistent with good faith and fair dealing, it is more meaningful to concentrate on what is

9  prohibited."  *Carma Developers (California), Inc., v. Marathon Development California,*

10  *Inc.,* 2 Cal.4th at 372 (citation omitted).  Moreover, the purported quote is also in direct

11  conflict with the concept that materiality of a breach must be determined on a case-by-

12  case basis.  *See, e.g., Brown v. Grimes*, 192 Cal.App.4th at 277-278.

13        Further, the provisions cited by Debtor did not impose upon Milner some ongoing

14  duty to act in good faith in performing an affirmative obligation.  Rather, they imposed

15  independent conditions *on Debtor* before Debtor could take certain actions—namely,

16  obtaining Milner's consent before using creative elements of the Play, *see Settlement*

17  *Agreement*, *Respondents' Trial Exhibits 5 and 7* and ECF 2043 at 28, § 1.2, using certain

18  assets used in producing the play, *Settlement Agreement, Respondents' Trial Exhibits 5*

19  *and 7* and ECF 2043 at 28, § 1.3 and at 33, Schedule 1, and creating CDs, DVDs, or

20  literary works based upon the play, *Settlement Agreement, Respondents' Trial Exhibits 5*

21  *and 7* and ECF 2043 at 28, § 1.4.  Milner substantially performed her obligations under

22  the Settlement Agreement as soon as it was executed, and the above provisions cited by

23  Debtor were simply conditions imposed upon it and not on her.  The Settlement

24  Agreement gave Milner the sole discretion to withhold her consent and did not impose

25  upon her an ongoing contractual obligation to perform because these provisions related to

26  the requirement that Debtor needed to obtain Milner's consent to its further use of her

27  intellectual property and physical assets relating to the Play, and not to any affirmative

28  obligation for her to perform.  If Milner subsequently withheld her consent in bad faith,

**MEMORANDUM DECISION**

1   which is not alleged, let alone proven, this would not constitute a material breach of an

2   affirmative obligation of Milner to perform such that Debtor would be excused from

3   granting the reversion of rights in the Play and making the royalty payments to Milner.

4   The court finds that based on this record, any breach of Milner's duty to exercise her sole

5   discretion to withhold her consent or not in good faith as to Debtor's future use of creative

6   elements of the Play, use of certain play production assets and creating CDs, DVDs or

7   literary works based on the play is now completely hypothetical, and any breach of this

8   duty would not be material because Debtor got Milner's substantial performance under the

9   Settlement Agreement by her release of claims against it, and a breach of Milner's duty to

10  exercise her sole discretion to withhold consent in good faith as to Debtor's future use of

11  creative elements of the Play, use of certain play production assets and creating CDs,

12  DVDs or literary works based on the play does not have the importance or seriousness to

13  be material to terminate the Settlement Agreement as a contract.

14          Debtor also argues that an indemnity provision imposed upon Milner an ongoing

15  duty to indemnify Debtor with respect to any claims brought against it by the composer of

16  the music used in the production of the play.  *Reply*, ECF 2053 at 8-9; *Settlement*

17  *Agreement, Respondents' Trial Exhibits 5 and 7* and ECF 2043 at 28, § 1.5(b).  Generally,

18  indemnity is "the obligation resting on one party to make good a loss or damage another

19  party has incurred."  *McCrary Construction Co. v. Metal Deck Specialists, Inc.*, 133

20  Cal.App.4th 1528, 1536 (2005).  Here, however, Milner did not agree to a general,

21  ongoing duty to indemnify Debtor for a loss or damage.  Rather, Section 1.5(b) of the

22  Settlement Agreement sets limitations on Milner's right to use any part of the music from

23  the play—specifically, that by using any part of the music she was agreeing to indemnify

24  Debtor with respect to any claim asserted by the composer of the music.  The court finds

25  that based on this record, any hypothetical breach of Milner's duty to indemnify Debtor

26  regarding claims of the composer of the music in the play is completely hypothetical, and

27  any breach of this duty is not material because Debtor got Milner's substantial

28  performance under the Settlement Agreement by her release of claims against it, and a

-15-

**MEMORANDUM DECISION**

1   breach of Milner's duty to indemnify Debtor regarding music composer claims does not

2   have the importance or seriousness to be material to terminate the Settlement Agreement

3   as a contract.

4          Moreover, the court finds that the non-disparagement provision in the Settlement

5   Agreement, *see Settlement Agreement*, *Respondents' Trial Exhibits 5 and 7,* and ECF

6   2043 at 29-30, § 3, is not a material obligation the breach of which would be material.

7   *See Ready Productions, Inc. v. Jarvis (In re Jarvis)*, No. 04-01097-JMD, 2005 WL 758805,

8   at *4 (Bankr. D.N.H. Mar. 28, 2005) ("Court does not find the non-disparagement clause to

9   be material . . .  A breach of the non-disparagement clause would not deprive either party

10  of the benefits reasonably expected under the Agreement nor would it effect a forfeiture.")

11  (applying Massachusetts law).  The court finds that based on this record, any hypothetical

12  breach of Milner's duty not to disparage Debtor would not be material because Debtor got

13  Milner's substantial performance under the Settlement Agreement by her release of

14  claims against it, and the matter of Milner's duty not to disparage Debtor does not have

15  the importance or seriousness to be material to terminate the Settlement Agreement as a

16  contract.

17         Finally, at trial Debtor presented a novel theory that Milner had some ongoing duty

18  under state law to periodically inspect the Play Property, and this duty constituted a

19  material obligation to perform that would make the Settlement Agreement an executory

20  contract.  *See Reorganized Debtor's Closing Brief,* ECF 2077, filed on October 1, 2018, at

21  5-7.  When the court questioned Debtor's counsel about the authority for such a rule,

22  counsel said there was a Ninth Circuit case included in Debtor's briefing, but he was

23  unable to find it at the moment.  The court directed counsel to include the argument and

24  authority in Debtor's post-trial brief, but Debtor did not include authority for this argument

25  in its post-trial brief, *see* ECF 2077 at 5-7, which leads the court to conclude that no such

26  authority exists.  In its post-trial brief, Debtor argues that "[b]ased on the history of

27  uncertainties and disputes over the contract terms, Milner had a duty to take reasonable

28  steps as an owner to make sure CCM [Debtor] was preserving the property to keep it

1  show ready.  Her duty to inspect, at lease [sic] annually, makes the subject storage

2  provision executory." ECF 2077 at 6-7.  Debtor cites no legal authority for this proposition.

3  Debtor's argument is apparently premised on its assumption that Debtor was storing the

4  property as a "gratuitous bailment contract, or a written agreement to store goods for no

5  consideration." ECF 2077 at 6.  However, Respondents make a strong argument that

6  such premise is erroneous because Milner gave consideration for Debtor's storage

7  obligations with her releases of liability of Debtor in the Settlement Agreement, which

8  agreement had been signed and subscribed to by Debtor and its affiliate and Milner.

9  *Post-Trial Brief of Carol Schuller Milner and Harold J. Light in Response to CCM's Post-*

10  *Trial Brief,* ECF 2078, filed on October 10, 2018, at 9-11; *see also, Settlement Agreement*,

11  *Respondents' Trial Exhibits 5 and 7, and Exhibit 1 to Jacobson Declaration*, ECF 2043 at

12  27-33; *see also, Post-Trial Brief of Carol Schuller Milner and Harold J. Light in Response*

13  *to CCM's Post-Trial Brief,* ECF 2078, filed on October 10, 2018, at 9-11.  The court need

14  not resolve this argument in order to decide the Motion, and believes that resolution of the

15  issue is best left for the parties to litigate in the State Court Action.  In any event, Debtor's

16  argument is strange because it would impose an implied duty on Milner's part to regularly

17  inspect the property in storage by Debtor on grounds that she could have no reasonable

18  expectation that Debtor would not breach the agreement to protect and maintain the

19  property it agreed to store, and in essence, she could have no reasonable expectation

20  that Debtor was acting in good faith to perform this obligation, which is not supported by

21  the record showing that Debtor was performing its storage obligations under the

22  agreement.  *Id.*; *Jacobson Declaration*, ECF 2043 at 24, ¶¶10-14.  That is, it should not be

23  presumed that Debtor entered into its storage obligation in bad faith in the Settlement

24  Agreement, or at least, that is what the court would think.

25        Thus, the Settlement Agreement is not an executory contract because it did not

26  impose upon Milner any ongoing obligation such that her failure to perform would

27  constitute a material breach and excuse Debtor's performance.  Because the Settlement

28

**MEMORANDUM DECISION**

1  Agreement is not an executory contract, it could not have been rejected by Debtor

2  pursuant to Section 365(g) of the Bankruptcy Code, 11 U.S.C.

3       This conclusion is further supported by Debtor's failure to list or mention the

4  Settlement Agreement on its (1) Schedule G – Executory Contracts and Unexpired

5  Leases, filed on December 1, 2010, ECF 66-3, 66-4; (2) Amended Schedule G, filed on

6  February 16, 2011, ECF 182 at 3; and (3) Rejection Motion, ECF 238.  These omissions

7  alone could have potentially judicially estopped Debtor from arguing that the Settlement

8  Agreement was rejected in the bankruptcy case.  In any event, Debtor's failure to list the

9  Settlement Agreement in these pleadings demonstrates either that Debtor did not believe

10 the Settlement Agreement was an executory contract or that it had no intention of

11 rejecting the Settlement Agreement.  Regardless, the court finds that the Settlement

12 Agreement is not an executory contract within the meaning of Section 365 of the

13 Bankruptcy Code, so it was not deemed rejected by the Rejection Motion or by the Plan

14 Confirmation Order.

15      The court need not decide whether Debtor may be relieved from any ongoing

16 obligation under the Settlement Agreement to store and maintain the Play Property

17 because the precise issue before the court is whether Respondents may be held in civil

18 contempt for violating the discharge injunction in this case because they filed an answer to

19 the state court complaint, and it is not necessary to address the issue of Debtor's ongoing

20 obligations under the Settlement Agreement to decide the contempt issue.[3]

21 **C.    The Plan Confirmation Order Has No Res Judicata Effect on Milner's Right to**

22 **Enforce the Settlement Agreement.**

23      Debtor's alternative argument is that, even if the Settlement Agreement is not an

24 executory contract, Milner is barred by the Plan Confirmation Order from continuing to

25 pursue claims arising from the Settlement Agreement, either because she litigated those

---

26 [3] The court notes that Debtor's argument that it had no ongoing obligation under the Settlement Agreement
27 undermines its entire theory underlying the Motion—that the Settlement Agreement was an executory contract
that was deemed rejected—because this would remove one of the essential requirements to an executory
28 contract: that material performance remains due on both sides.

(Continued...)

**MEMORANDUM DECISION**

1  claims when she filed her proofs of claim in the bankruptcy case, or because Debtor

2  breached the Settlement Agreement preconfirmation.[4]

3       A Chapter 11 confirmation order has the effect of a judgment by the court, so res

4  judicata bars relitigation between the same parties of any issues raised or that could have

5  been raised in the confirmation proceedings.  *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir.

6  1995); *see* 11 U.S.C. § 1141(a).  While a debtor is discharged of liability for conduct

7  occurring before the discharge, a debtor is still liable for its post-discharge conduct.

8  *O'Loghlin v. County of Orange*, 229 F.3d 871, 874-875 (9th Cir. 2000).  For purposes of

9  determining liability relative to a discharge, a claim arises at the time of the events giving

10  rise to the claim, not at the time a plaintiff is first able to file suit on the claim.  *Id.* at 874.

11      Here, the proofs of claim filed by Milner in this case had nothing to do with storage

12  of the Play Property.  Milner filed four proofs of claim: (1) Claim No. 243-1, amended by

13  Claim No. 243-2, asserting a claim of $10,615 for "housing allowance and copyright

14  infringement"; (2) Claim No. 336-1 asserting an administrative claim for an unknown

15  amount based on alleged copyright infringement relating to the Play; (3) Claim No. 337-1

16  asserting an administrative claim of $83,608.92 for breach of an oral employment contract

17  for services as Debtor's Director of Brand Development and Intellectual Property; and

18  (4) Claim No. 342-1 asserting an administrative claim for an unknown amount based on

19  alleged copyright infringement relating to the Play.  The proofs of claim relate only to an

20  alleged housing allowance, copyright infringements, and an employment contract.  None

21  of these proofs of claim alleges a breach of the Settlement Agreement with regard to the

22  Play Property.  Further, any breach by Debtor occurred post-confirmation, so Milner could

23  not have violated the discharge injunction by asserting her affirmative defenses in the

24  State Court Action.  At no time before the Plan was confirmed did Debtor breach the

25  Settlement Agreement or notify Milner that it would no longer store the Play Property.

26

27  [4] Debtor has apparently changed its theory in response to the arguments put forth by Respondents.  For
example, the Motion argues that in the bankruptcy case, "Milner failed to assert claims under the 2006
28  [Settlement Agreement]," *Motion*, ECF 2043 at 6:26, but the Reply argues that "Milner litigated claims under
[the Settlement Agreement] and the Debtor prevailed," *Reply*, ECF 2053 at 1:25-26.

**MEMORANDUM DECISION**

1  *Milner Declaration*, ECF 2051 at 3, ¶¶ 4-5.  On the contrary, the evidence shows that

2  pursuant to the Settlement Agreement, Debtor was storing the Play Property and

3  continues to store the Play Property to this day.

4        Debtor presented no evidence that it refused to perform under the Settlement

5  Agreement or that it engaged in conduct that made it impossible to perform its obligations

6  under the Settlement Agreement before entry of the Plan Confirmation Order, which would

7  give rise to a claim for preconfirmation breach by Milner.  *See Taylor v. Johnston*, 15

8  Cal.3d 130, 139 (1975) ("there is no implied repudiation, i.e., by conduct equivalent to

9  unequivocal refusal to perform, unless 'the promisor puts it out of his power to perform'");

10  *id.* at 140 (rejecting the notion that "giving [plaintiff] the runaround" and conduct

11  suggesting that defendants "had no intention of performing their contract" constituted an

12  implied repudiation, the court stated, "Plaintiff has not presented . . . any authority in

13  California in support of his proposition that conduct which has not met the test for an

14  implied repudiation, i.e. conduct which removed the power to perform, may nonetheless

15  be held to amount to the equivalent of an express repudiation and thus constitute an

16  anticipatory breach").

17        Debtor offered a letter from its former counsel to Milner, dated June 25, 2012,

18  demanding that Milner remove the Play Property from Debtor's warehouse.  *See* ECF

19  2053 at 14-16.  However, this letter is dated after entry of the Plan Confirmation Order on

20  December 12, 2011, *Plan Confirmation Order*, ECF 841, and the Effective Date, May 1,

21  2012, *see Order*, ECF 1105.  Also, attached to Debtor's post-trial brief is an

22  unauthenticated copy of a purported exchange of email messages between Milner and a

23  representative of Debtor from June 2009.  *See Debtor's Post-Trial Brief*, ECF 2077 at 10-

24  11.  Even if this email exchange were properly authenticated and admitted into evidence

25  at trial, it would do nothing for Debtor because there was no absolute and unequivocal

26  refusal by Debtor to perform under the Settlement Agreement expressed therein.  *See*

27  *Martinez v. Scott Specialty Gases, Inc.*, 83 Cal.App.4th 1236, 1246 (2000) ("[a]nticipatory

28  breach must appear only with the clearest terms of repudiation of the obligation of the

-20-

1    contract") (quoting *Guerrieri v. Severini*, 51 Cal.2d 12, 18 (1958)).  Similarly, all other

2    emails, letters, or other evidence of communications from Debtor to Milner fell well short of

3    conduct tantamount to an express repudiation constituting anticipatory breach.  Moreover,

4    the evidence shows that Debtor continued to store the Play Property and continues to do

5    so to this day.  Thus, because Milner did not litigate claims related to the Play Property

6    when she filed her proofs of claim in the bankruptcy case, and because Debtor did not

7    breach the Settlement Agreement preconfirmation, the Plan Confirmation Order could not

8    have res judicata effect barring Milner's ability to enforce the Settlement Agreement.

9    **D.    Debtor's Other Arguments Have No Merit.**

10    Debtor has made numerous miscellaneous arguments that either have no bearing

11    on the outcome of the Motion or are simply without merit.  First, Debtor argued for the first

12    time in its trial brief that Milner could not have obtained ownership of the Play Property

13    because the Settlement Agreement was not accompanied by a bill of sale.  *See* ECF 2071

14    at 2-3.  As explained by the court on the record at trial, Debtor misreads *Hull v. Ray*, 80

15    Cal.App. 284 (1926), which describes the form requirements of a bill of sale, but does not

16    require that *all* transfers of ownership in personal property must be evidenced by a bill of

17    sale.  Such a reading contradicts California law.  *See* California Civil Code § 1000

18    ("Property is acquired by (1) Occupancy; (2) Accession; (3) Transfer; (4) Will; or

19    (5) Succession."); California Civil Code § 1039 ("Transfer is an act of the parties, or of the

20    law, by which the title to property is conveyed from one living person to another.");

21    California  Civil Code § 1052 ("A transfer may be made without writing, in every case in

22    which a writing is not expressly required by statute.").

23    Second, Debtor argued for the first time in its trial brief that Debtor and Milner never

24    had a meeting of the minds as to the Settlement Agreement.  *See Debtor's Trial Brief*,

25    ECF 2071 at 3-7.  This argument undermines the entire basis for the Motion—that the

26    Settlement Agreement was rejected in the bankruptcy case and the underlying obligations

27    were therefore discharged.  It is also contradicted by Debtor's own judicial admissions in

28    the Motion, the supporting declarations, and the State Court Complaint, which was

**MEMORANDUM DECISION**

1   incorporated by reference into the Motion.[5]  Further, the argument does nothing to

2   undermine the validity of the Settlement Agreement because the court finds that the

3   versions of the Settlement Agreement to which Debtor points do not differ in any material

4   respect.  *Compare Settlement Agreement, Respondents' Trial Exhibits 5 and 7,* and

5   *Exhibit 1 to Jacobson Declaration*, ECF 2043 at 27.

6         Third, Debtor argues that the Play Property was never Milner's Property.  While this

7   argument might be relevant to Debtor's claims in the State Court Action, it does nothing

8   for Debtor in this contempt proceeding because it has no bearing on determining whether

9   Milner is attempting to collect on a discharged preconfirmation contractual obligation by

10  filing her Answer.  Moreover, the argument is again contradicted by Debtor's own judicial

11  admissions that Milner owned the Play Property in the Motion, the supporting

12  declarations, and the State Court Complaint, which was incorporated by reference into the

13  Motion.[6]

14        Fourth, Debtor argues that the Settlement Agreement did not create an ongoing

15  obligation on Debtor to store and maintain the Play Property.  While this argument goes

16  directly to the allegations in the State Court Complaint and will be relevant to the State

17  Court's determination of the State Court Action, as stated previously, it does nothing to

18  affect a determination of this court in this case whether Respondents violated the

19  discharge injunction by filing an Answer to the State Court Complaint.  That is, the

20  question of whether Debtor has a continuing obligation to continue to store and maintain

21  the Play Property has no bearing on whether Respondents violated the discharge

22  injunction by filing an answer in the State Court Action.

23

24

25

---

26  [5] "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  *American Title Insurance Co. v. Lacelaw*

27  *Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  A judicial admission must be deliberate, clear, and unequivocal. *Docmagic, Inc. v. Ellie Mae, Inc.*, No. 3:09-CV-4017-MHP, 2011 WL 871480, at *7 (N.D. Cal. 2011) (citing

28  *Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319, 329 (5th Cir.2001)).
    [6] *See supra* note 5.

**MEMORANDUM DECISION**

## IV.    CONCLUSION

For all the foregoing reasons, the court determines that Debtor has failed to meet its burden of proving by clear and convincing evidence that Respondents knowingly and willfully violated the discharge injunction, and therefore, the court denies the Motion.  A separate final order on the Motion consistent with the findings of fact and conclusions of law set forth in this memorandum decision is being filed and entered concurrently herewith.

IT IS SO ORDERED.

# # #

Date: November 2, 2018

_____
Robert Kwan
United States Bankruptcy Judge

**MEMORANDUM DECISION**